617 So.2d 978 (1993)
Carlotta MORRIS
v.
William J. STEWART, Rollins Cab Company and Protective Casualty Insurance Company.
No. 92-CA-0565.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1993.
*979 Nat G. Kiefer Jr., Kiefer, Kiefer & Schneider, New Orleans, for plaintiff/appellee.
Wayne W. Foley, Law Offices of Raymond L. Hess, New Orleans, for defendants/appellants.
Before BYRNES, LOBRANO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
In this personal injury action arising out of an automobile accident, defendants, William J. Stewart, Rollins Cab Company and Louisiana Insurance Guaranty Association ("LIGA") appeal a judgment rendered in favor of plaintiff, Carlotta Morris.
On May 16, 1989, the vehicle plaintiff was driving or sitting in was involved in a very minor accident with a Rollins Cab Company cab being operated by defendant, William Stewart. Protective Casualty Insurance Company ("PCIC"), the insurer of the cab, became insolvent on May 24, 1991 and LIGA was thereafter substituted as a defendant.
On June 11, 1991 a pre-trial order was entered setting trial for October 17, 1991.
The pre-trial order required that:
All subpoenas shall be ordered with proper instructions and addresses on or before 30 days prior to the above trial date.
The pre-trial order also stated:
Continuances will not be granted if this trial order is not strictly complied with.
On September 26, 1991, counsel for defendants issued a subpoena for William Stewart, the cab driver, to appear at the October 17, 1991 trial. This subpoena was not issued in accordance with the pre-trial order. On October 9, 1991 plaintiff filed the amended and supplemental petition substituting LIGA for PCIC. On October 16, 1991, counsel for Stewart, Rollins and LIGA filed a motion to continue the trial set for October 17, 1991 because of the substitution of LIGA as a defendant. Trial was subsequently reset for December 11, 1991. On November 12, 1991, counsel for LIGA and the other defendants issued a subpoena for Stewart. This was 29 days *980 before the December 11th trial date and in violation of the pre-trial order.
On the day of the scheduled trial, December 11, 1992, counsel for LIGA filed a written motion to continue because Stewart did not show up for trial. Counsel stated to the court that the November 12, 1991 subpoena had been returned marked "Empty House, No One Lives There." It should be noted that the address on the subpoena was the same one listed on the previous subpoena which apparently had been served on Stewart. In its motion to continue, counsel for LIGA stated that he spoke to Stewart on December 3, 1991, eight days before trial, and asked him to appear at a meeting scheduled for December 5, 1991. Counsel stated that Stewart did not appear for the meeting and did not return numerous phone calls. Counsel stated that he also discovered a new address for Stewart on December 3, 1991 and mailed him a letter notifying him of the trial date. To find the new address counsel simply inquired at Rollins Cab Co.
The trial court denied the motion to continue because the subpoena had not been issued thirty (30) days before trial as required by the pre-trial order. The trial court also refused a request to leave the record open. Following trial, the court rendered judgment in favor of plaintiff, awarding her general damages in the amount of $4,500.00, and special damages in the amount of $973.00 for medical expenses and $194.00 for lost wages. In its reasons for judgment, the trial court found that plaintiff's car had been parked thirty inches from the curb with its engine running and the taxi being driven by Stewart struck it.
On appeal, defendants claim the trial court erred (1) in denying their motion to continue, (2) in awarding medical expenses, and (3) in awarding legal interest from the date of judicial demand.

MOTION TO CONTINUE
La.C.C.P. art. 1602 provides in pertinent part:
A continuance shall be granted if at the time a case is to be tried, ... a material witness has absented himself without the contrivance of the party applying for the continuance. (Emphasis added).
There is no question that defendant cab driver William Stewart, who was driving one of the vehicles involved in the accident, was a material witness within the meaning of C.C.P. art. 1602. Although there is no evidence that counsel for LIGA overtly contrived to have Stewart absent himself from the trial, he contributed to the absence by failing to adhere to the pre-trial order in two ways. First, the subpoena was not ordered thirty (30) days before trial. Second, the subpoena did not have Stewart's "proper" address and was therefore returned after an unsuccessful attempt by deputies to serve it. Assuming that Stewart would have appeared at trial if he had been served with a subpoena, and that he would have been served if counsel for LIGA had listed his correct address on the subpoena, there is a substantial connection between the failure to adhere to the pre-trial order and Stewart's failure to appear at trial. Given the ordinary course of events, if LIGA had inquired at Rollins Cab Co. to verify Stewart's current address to put on the subpoena, Stewart would have been served and appeared for trial.
Even though the trial court did not base his denial of the continuance on the failure to list Stewart's correct address, it is a factor to consider in determining whether the trial court erred in denying LIGA's motion to continue. It is also important to note that Stewart apparently was the only witness LIGA planned to call as a witness. It did not have a stack of subpoenas to order; it only had one.
LIGA argues that "reasonable efforts" were made to secure the testimony of Stewart for trial. It further claims the subpoena was filed late because November 11, 1991 was a legal holiday. LIGA claims it should have had until November 12th to order the subpoena because of the holiday. It cites La.C.C.P. art. 5059 which provides:
In computing a period of time allowed or prescribed by law or by order of court, *981 the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.
LIGA's reliance on La.C.C.P. art. 5059 is somewhat misplaced. It applies to and contemplates prescribed periods of time after an "act, event, or default" within which certain action must be taken. In the instant case there was no such occurrence which triggered the running of a prescribed period of time within which LIGA had to order a subpoena. The subpoena simply had to be ordered at least thirty (30) days prior to trial. LIGA failed to adhere to the pre-trial order. The legal holiday, November 11th, All Saints Day, has long been a legal holiday in the City of New Orleans recognized by the Civil District Court for the Parish of Orleans. We find no merit to LIGA's argument that it should have had until November 12th to order the subpoena.
Rules of court are binding upon and have the effect of law on judges and litigants. Laprarie v. King, 575 So.2d 921 (La.App. 2d Cir.1991), writ denied, 578 So.2d 140 (la.1991); Lewis v. Modular Quarters, 508 So.2d 975 (La.App. 3rd Cir. 1987), writ denied, 514 So.2d 127 (La.1987), cert. denied, 487 U.S. 1226, 108 S.Ct. 2886, 101 L.Ed.2d 920 (1988). C.C.P. art. 1602. However, this general rule is limited by the proviso that such rules of court must not conflict with legislation. Rodrigue v. Rodrigue, 591 So.2d 1171 (La.1992); Trahan v. Petroleum Cas. Co., 250 La. 949, 200 So.2d 6 (1967).
We see no conflict between the pre-trial order and La.C.C.P. art. 1602. LIGA's failure to adhere to the pre-trial order amounted to a contrivance as contemplated by La.C.C.P. art. 1602. Under these circumstances, we find no error with the trial court's denial of LIGA's motion to continue.

JUDICIAL INTEREST
The trial court awarded judicial interest from the date of judicial demand. LIGA argues that interest should be awarded only from the date of PCIC's insolvency. It cites La.R.S. 22:1379(3)(d) which provides:
"Covered claim" shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.
This provision became law on September 7, 1990.[1] Plaintiff's original suit was filed against PCIC on January 26, 1990, seeking, among other things, legal interest from the date of judicial demand. Plaintiff claims that R.S. 22:1379(3)(d) was a substantive change in the law and therefore is not to be applied retroactively so as to bar her recovery of legal interest from the date of judicial demand. La.C.C. art. 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
There is no question but that R.S. 22:1379(3)(d) was a substantive change in the law. Prior to the change persons could recover legal interest from the date of judicial demand regardless of the date of the insolvency of the insurer. Therefore, R.S. 22:1379(3)(d) must be applied prospectively only. The trial court properly awarded legal interest from the date of judicial demand.

CREDIT FOR MEDICAL EXPENSES
The trial court awarded plaintiff medical expenses in the amount of $973.00. LIGA contends that it is entitled to a "dollar-for-dollar *982 credit" for other insurance available to plaintiff for medical expenses under La.R.S. 22:1386(A), as amended by Acts, 130, § 1 effective September 7, 1990. The trial court specifically found that the 1990 amendment was a substantive change, that it was not in effect when the accident in question occurred or suit was filed and, therefore, under La.C.C. art. 6, was not to be applied retroactively. La.R.S. 22:1386(A), as in effect at the time the trial court rendered judgment provided:[2]
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. Any amounts payable by such other insurance shall act as a dollar-for-dollar credit against any liability of the association [LIGA] under this Part.
The 1990 amendments to R.S. 22:1386 effected a substantive change in the law, affecting the right of injured persons to recover damages. Under La.C.C. art. 6, the 1990 amendments are to be applied prospectively only. Segura v. Louisiana Insurance Guaranty Association, 615 So.2d 516 (La.App. 3rd Cir. 1993).
R.S. 22:1386(1) as in effect at the time of the accident and filing of suit provided:
Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.
In Hickerson v. Protective National Ins. Co. of Omaha, 383 So.2d 377 (La.1980), the Louisiana Supreme Court interpreted then R.S. 22:1386(1) as "designed to apply to ordinary insurance coverage" to "prevent double recovery." The court distinguished between "ordinary insurance" coverage and uninsured motorist coverage which was required by public policy. The Hickerson analysis is limited to uninsured motorist coverage, and thus, is no bar to the reduction of plaintiff's claim for medical expenses by the amount of any recovery by her under "ordinary insurance coverage."
LIGA introduced plaintiff's answer to one of its interrogatories in which she stated that she was insured for hospitalization benefits by her employer, the City of New Orleans but had made no claim against the City for medical expenses related to the accident. However, no evidence was offered as to amount of any benefits plaintiff would have been entitled to under the insurance plan for the City of New Orleans. Therefore, we find no error in the trial court's award of $973.00 in medical expenses to plaintiff.[3]
*983 For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Originally designated subparagraph (3)(c), (3)(c) was redesignated subparagraph (3)(d) on authority of La.R.S. 24:253.
[2] Subsequent to the rendering of the trial court judgment and filing of this appeal, the legislature again amended R.S. 22:1386(A) by Act 237, § 2 to provide:

Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, and other medical expense coverage. As to the association [LIGA], any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant.
Act 237, § 3 provided:
This Act shall apply to all covered claims, as defined in R.S. 22:1379, pending on or arising on or after the effective date of this Act.
In Segura v. Louisiana Insurance Guaranty Association, 615 So.2d 516 (La.App. 3rd Cir. 1993), the court found that the 1992 amendments did not apply to a case on appeal where the trial court had rendered judgment before the effective date of the amendments. Although the circumstances of this case differ from Segura, we do not believe the legislature intended that a "pending" claim include one in which a trial court rendered judgment before the effective date of the amendments.
[3] The City attempted to intervene in the suit to recover $297.84 in medical benefits paid under workers' compensation. The trial court denied the petition for intervention because it was filed too late. LIGA made no claim for a credit for these medical benefits.